UNITED UNIONS, INC., Appellant,

v.

WEBSTER & SHEFFIELD, et al., Appellees.

No. 84–779.

District of Columbia Court of Appeals.

Argued March 28, 1985.

Decided Feb. 24, 1987.

---

Orrin D. Baird, with whom Stephen P. Clark, Washington, D.C., was on the brief, for appellant.

Roger L. Waldman, New York City, with whom Charles R. Donnenfeld, Washington, D.C., was on the brief, for appellees.

Before NEWMAN and ROGERS, Associate Judges, and REILLY, Senior Judge.

PER CURIAM:

This is an appeal by the owner of an office building from a judgment for damages entered in favor of a tenant for an asserted breach of a provision in the written lease authorizing the tenant, under certain conditions, to sublet all or part of the leased premises, if the landlord granted prior written consent. Citing a clause in that instrument under which the landlord agreed that "such consent will not be unreasonably withheld or delayed," the tenant presented evidence in a jury trial to support its contention that the refusal of the landlord to consent to a proposed sublease of the tenant's office space to a designated corporation was unreasonable. The tenant recovered the sum of $45,252.30, the difference between the rent it was obligated to pay for the balance of the term of the lease, and the rent it would have received had the proposed sublease been allowed.

In its appeal, the landlord raises a single issue, *viz.*, that in formulating the special interrogatories to the jury the trial court erred in not framing a question which explicitly required the jury to decide whether its withholding of consent to the proposed sublease was "reasonable under the circumstances." In our opinion, however, the trial court's instructions were adequate to deal with the issues in the context of the evidence. Thus perceiving no error, we affirm.

The evidence may be summarized as follows:

On April 24, 1978, the law firm of Webster & Sheffield (the tenant) entered into a five-year commercial lease with United Unions, Inc. for space in a downtown office building.[1] The lease contained a provision which in pertinent part read:

ASSIGNMENT AND SUBLETTING. 9.01—Tenant will not assign, transfer, mortgage or encumber this Lease without obtaining the prior written consent of Landlord *which consent will not be unreasonably withheld or delayed....* Tenant will not sublet the Premises ... without giving Landlord thirty (30) days written notice of Tenant's intention to sublet all or any part of the Premises. Within thirty (30) days from receipt of said notice, Landlord shall have the right,

---

1. United Unions, Inc. is a corporation formed by four international trade unions. After its formation, it undertook the construction of a modern office building to provide headquarters in Washington for these unions and to rent out offices not needed by them to other persons.

at its option, to either release Tenant from its Lease for such space or to sublet all or any part of the Premises from the Tenant at the same rental Tenant is paying Landlord. In the event Landlord does not exercise either its right of release or, its right to sublet all or part of the said Premises within thirty (30) days from receipt of said notice, Tenant may sublet all or any part of the Premises after first obtaining the written consent of Landlord.... [Emphasis added.]

Approximately two years later, in a letter dated June 11, 1980, Byron Keith Huffman, a partner in the tenant law firm, informed Preston George, Jr., the building manager, that his firm proposed to move out and requested authority to sublease effective July 15, 1980, stating that the firm would submit a proposed sublease in the event United Unions consented to such an arrangement.

More than a month elapsed without any written response. On July 21, 1980, the building manager sent a letter to Huffman, in which he stated, without reference to the sublease proposal, that it was his impression that the law firm intended to vacate the premises at the end of the month. If this were so, the letter continued, the landlord would exercise its right under Section 9.01, *supra*, to release the tenant from its lease. Huffman responded in a letter dated the next day, saying: "[I]t appears that we do have some problems since in the absence of a reply to our June 11 letter to you within the 30 day period provided in [Section 9.01 of] our lease, we offered the space on the market and have a number of expressions of interest." Huffman suggested in his letter that the two men meet to resolve this problem.

At trial, the manager testified that at some unspecified time before writing his letter he talked with the law partners, and reminded them that the landlord had a policy against any subleasing as a result of an understanding among the four unions which had formed the corporation that owned the building. He said that Huffman was aware of this policy, as he had mentioned it on prior conversations with regard to requests for additional office space. He also told the jury that this policy was so firm, that a sublease even to a branch of the Treasury or to Riggs Bank would not have been consented to.

On July 25, two or three days later, such a meeting did occur with the building manager, who was accompanied by Donald Cefaratti, the landlord's lawyer. No specific resolution was reached. Although the policy against subleasing was discussed, Huffman testified that he gained the impression that this policy was not inflexible and therefore in a letter to George, dated July 30, 1980, he wrote to confirm his understanding, stating that as he had indicated in the meeting "in the near future ... [Webster & Sheffield] will be requesting approval for an acceptable subtenant for the balance of ... [the lease] term."

The law firm moved out of the building sometime in late July or early August 1980, but was warned by a letter dated August 5, from Cefaratti that such action constituted a default under the terms of the lease. According to Huffman, however, a check for the rent was sent to the landlord, who refused to accept it.[2] Subsequently, the tenant deposited the monthly checks, as rent fell due, into an escrow account.

The representatives of the parties did not meet face-to-face again, but the matter of subleasing the vacated space was pursued by the firm through real estate brokers and in telephone conversations between Cefaratti and another partner in the tenant firm, Murray Drabkin. The latter sent a note, dated September 25, 1980, addressed to George (with a copy to Cefaratti), stating that A.H. Hansen, Inc., had signed a sublease, conditioned on the landlord's written consent to the subleasor on or before October 1, 1980. Drabkin ended the note by requesting that George contact him in the

2. There was testimony that the landlord's agent did cash this check inadvertently, but then sent the money back to the tenant law firm, rather than crediting this sum to its account.

event there was any problem in obtaining the timely consent of the landlord.[3]

No response, oral or written, was received by the law firm until after mid-October. In a letter dated October 17, Cefaratti notified Drabkin that his client would not consent to the subletting requested "for the reasons expressed in the previous telephone conferences." Just prior to the receipt of this communication, the law firm, in a letter dated October 15, had informed the Hansen Company that it had been unable to obtain the requisite consent to the sublease and, hence, was returning the advance deposit.

The Cefaratti letter was admitted at trial over appellant's objection. When asked what "reasons" the writer referred to as the grounds for refusing consent to the subleasee, Huffman testified that the objections expressed in the telephone conferences were that (1) the tenant had defaulted on its lease obligations, and (2) had been orally informed prior to the expiration of the 30 day period.

Central to this appeal are the instructions given by the trial court to the jury on Section 9.01 of the lease, quoted *supra.* Under the authority of Super.Ct.Civ.R. 49, the court directed the jury to answer the following interrogatories:

1. Did Plaintiff, Webster & Sheffield, give Defendant, United Unions, Inc., 30 days written notice of Webster & Sheffield's intention to sublet the premises?

2. Did Defendant, United Unions, Inc., orally notify Plaintiff, Webster & Sheffield, within 30 days it received said intention to sublet that Defendant, United Unions, Inc., was exercising its option to release tenant of the lease obligation or sublet itself?

If your answer to No. 1 is Yes, also Answer No. 3.

3. Did Defendant, United Unions, Inc., fail to give consent to the sublease of Hansen Co. because of insufficient time to act?

The jury answered the first interrogatory affirmatively, but responded negatively to the second and third. It thus returned a verdict in favor of the tenant.

Appellant now contests only the word of interrogatory 3, arguing that the real question which should have been put to the jury was "whether United Unions' withholding of consent to the A.H. Hansen sublease proposed by Webster & Sheffield was reasonable under the surrounding facts and circumstances." Appellant points to several instances at trial in which its counsel specifically requested an instruction on the reasonableness of the withholding of consent.

■ Granted that such a request was made, the record shows that when pressed by the court for the factual basis for such an instruction, counsel raised only the issue of the sufficiency of time given the landlord to respond to the sublease proposal, as the October 1st deadline was less than a week away when the tenant's letter was delivered. He drew the court's attention to testimony that only the executive committee of the corporation, consisting of the presidents of the four unions which formed the corporation, had authority to change the policy against subletting, and it was unreasonable to expect that a meeting of such committee could convene, deliberate, and act within such a short time.[4] In our opinion, the court's refusal to phrase the question in the form proposed was proper because the instructions eventually given

---

3. According to the September 25 letter, the Hansen sublease was also conditioned on United Unions' consent to the installation of a computer terminal in the premises. The letter described A.H. Hansen, Inc. in his letter as "an employee benefit, actuarial and compensation consulting firm with offices in nineteen major U.S. cities and abroad and a main office in Lake Bluff, Illinois." Drabkin enclosed copies of Hansen's 1979 annual report and "various informational material." He did not enclose a copy of the sublease.

4. Counsel for United Unions argued:

[O]ur argument is that the law is that the standard for withholding consent is what a reasonable business person would do under the circumstances. An argument is that on the facts of this case, given, (1) the policy [against subletting], and (b) the means and the need to change that policy, what it would require in terms of time and action, that what United Unions did was reasonable under the circumstances. . . .

adequately addressed the only factual issues raised by the evidence.

The record discloses that appellant's assignment of error overlooks several things. First, in its general jury instructions, the court addressed, albeit without elaboration, the "reasonableness" provision of Section 9.01.[5] Secondly, it was appellant's counsel who focused exclusively upon the time factor as presenting a "reasonableness" issue. In fact, several pages of transcript are devoted to argument in bench conference on this very issue. Finally, counsel does appear to have approved of interrogatory three as a proper instruction on the question of unreasonable withholding. After the expansive colloquy between the parties and the court, the following interchange took place:

> THE COURT: ... If you can frame a question that, in good conscience, I can give to the jury, I will. I will not give those broad questions that we can argue about for five days and which I'll set aside, anyway, dealing with the shortage of time, such as, did you find from the evidence, or do you find—do you find that the—that consent to the sublease was being withheld because of the shortage of time, then that's a different argument, and I would consider something of that sort. So far as the question of the jury is concerned. But, to ask them—there is nothing in this record—I don't want to repeat it, there is nothing in the record to justify that other question going to the jury.

> \* \* \* \* \* \*

> MR. CLARK: But, I would certainly—I feel that such an instruction, as it is outlined, would be appropriate and would be agreeable to the defendant.

THE COURT: I'll get a message to the jury, now, do you—did defendant fail to give consent to subletting because of insufficient time?

Then after charging the jury and reciting the precise wording of the special interrogatories, the court inquired of the parties:

> Before I give the closing instructions, any corrections, modifications or objections?

Appellant's counsel expressed no objection, nor did he request any amendment. Opposing counsel did object to the second interrogatory on the ground that no testimony had been offered of an oral notification within the 30 day period. The court, however, let its instruction stand.

We note that there was ample evidence to support the jury's conclusion on the interrogatory touching on the reasonableness issue, for the landlord did ultimately withhold consent on grounds appellant does not argue were reasonable. Moreover, one of appellant's principal witnesses, John H. Lyons, conceded that the landlord's executive committee never inquired into the suitability of the Hansen Company as a subtenant.

Accordingly, the judgment for damages should not be disturbed as it fell within the rule of a decision we were guided by in *1010 Potomac Associates v. Grocery Manufacturers*, 485 A.2d 199 (D.C.1984).

*Affirmed.*

5. The court instructed:
 First, the plaintiff, the tenant, must notify the landlord, United Unions, that he wants to sublet. Under the terms of the lease, he says,
 I have an obligation to let you sublet. I cannot reasonably withhold [consent to] sublet.... And, I won't reasonably withhold consent.